IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Mid City Bank, Inc.;**<br><br>         **Plaintiff,**<br><br>   vs.<br><br>**PATRICIA M. FITL, as Personal Representative of the Estate of James G. Fitl, Deceased;**<br><br>         **Defendant** | **8:14CV346**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the Partial Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") (Filing No. 33), filed by Defendant Patricia Fitl ("Defendant") as Personal Representative of the Estate of James G. Fitl ("Fitl"), deceased, and the Motion to Strike Certain Affirmative Defenses ("Motion to Strike") (Filing No. 42), filed by Plaintiff Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Mid City Bank, Inc. ("Bank").  For the reasons stated below, the Motion to Dismiss will be denied and the Motion to Strike will be granted in part.

## BACKGROUND

The following facts, alleged in the Amended Complaint (Filing No. 5), are assumed true for purposes of the Motion to Dismiss.  The Bank's main office and all four of its branch offices were located in Omaha, Nebraska. (Filing No. 5 ¶ 10.)  Fitl served as its President from August 16, 1971, to September 15, 2010, and as Chairman of its board from March 6, 1972, to October 8, 2010.  (*Id.* ¶ 5.)  During that time, every Bank loan was made with Fitl's full knowledge and direct approval.  (*Id.* ¶ 12.)

Before August 13, 2009, the Bank operated under several versions of a lending policy ("Loan Policy"), lacking any practical guidance.  (*Id.* ¶ 13.)  None of these versions mandated or provided any (i) processes for approval, funding, and file documentation for loans; (ii) control and oversight mechanisms; or (iii) risk management mechanisms.  (*Id.*)  The Loan Policy did not include limits on certain key metrics, such as debt-to-income ratio limits or minimum credit scores.  (*Id.* ¶ 14.)  Some versions lacked loan-to-value ratio limits.  (*Id.*)

The Loan Policy merely instructed the Bank's loan officers to consider general factors in evaluating potential loans, such as the borrower's financial condition, management capability, plan of repayment, and the economic environment.  (*Id.*)  The Loan Policy encouraged loan officers to have "an accurate and thorough understanding of each customer's financial needs and conditions" and "complete confidence in the borrower's honesty and integrity, and reasonable confidence in his ability to repay."  (*Id.* ¶ 13.)  Before the Loan Policy's revision in 2009, loan documentation was "nearly nonexistent."  (*Id.* ¶ 15.)  For several years, the Bank operated with no written policy regarding loan approval authority for Bank management.  (*Id.* ¶ 16.)

In 2009, the Bank revised its Loan Policy to require maintenance of a complete credit file on each borrower.  (*Id.* ¶ 15.)  The credit files contained information such as collateral valuations and borrower financial information.  (*Id.*)  Also in 2009, the Bank established a Loan Committee to review and approve loans.  (*Id.*)

The FDIC alleges that approvals of seventeen loans ("Target Loans") by the Bank and Fitl between July 6, 2007, and March 8, 2010, were deficient in at least one of the following ways: (i) failure to analyze the borrowers' and guarantors' ability to repay

2

the loans; (ii) lending to borrowers with inadequate cash flow; (iii) reliance on outdated, unverified, and inadequate financial information for borrowers and guarantors; (iv) failure to analyze the value of collateral; (v) failure to require adequate collateral for loans; (vi) failure to acquire adequate appraisals; and (vii) lending outside the Bank's trade market area. (*Id.* ¶ 17.)

Despite these alleged deficiencies, Fitl approved the Target Loans. (*Id.* ¶ 20.) In so approving, Fitl failed to undertake analysis necessary to evaluate the Target Loans, and violated Loan Policy requirements. (*Id.* ¶ 18.) Fitl also approved loans without documentation, and created no standard credit or loan memoranda prior to 2010. (*Id.* ¶ 19.)

On November 4, 2011, the Bank ceased operation, and the Nebraska Department of Banking and Finance appointed the FDIC as the Bank's receiver. (*Id.* ¶ 3.) Fitl died on October 30, 2014. On November 3, 2014, the FDIC filed this action against Fitl personally, seeking damages of $4,018,000.00 stemming from the approval of the Target Loans, and asserting claims based on gross negligence under § 1821(k) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") ("Count I"), *see* 12 U.S.C. § 1821(k); and Breach of Fiduciary Duty in violation of Nebraska Law ("Count II"). The next day, November 4, 2014, the FDIC filed an action in the County Court of Douglas County, Nebraska, to name Galen Stehlik ("Stehlik") as Special Administrator for Fitl's estate, and the FDIC amended its Complaint in this Court, naming Stehlik as a defendant in his capacity as Special Administrator. (*Id.* ¶ 4.) Although the Defendant acknowledges that the County Court granted the FDIC's motion for appointment of Stehlik as Special Administrator on November 4, 2014, the

3

Defendant alleges that the County Court did not issue formal letters of appointment to Stehlik until the next day, November 5, 2014. (Defendant's Brief, Filing No. 48 at 16; Answer, Filing No. 35 ¶ 97.)

## STANDARD OF REVIEW

### I. Motion to Dismiss: Rule 12(b)(6)

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.'" *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629–30 (8th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 630 (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions." *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d

4

1115, 1120 (8th Cir. 2011) (internal quotation marks omitted) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010)). When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

**II. Motion to Strike: Rule 12(f)**

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[A] district court enjoys 'liberal discretion'" in ruling on a Rule 12(f) motion to strike. *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Thor Corp. v. Automatic Washer Co.*, 91 F.Supp. 829, 832 (D.C. Iowa 1950)). "Despite this broad discretion however, striking a party's pleadings is an extreme measure, and, as a result, . . . '[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'" *Id.* (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977)).

"A motion to strike a defense should be denied 'if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear.'" *Dahhane v. Stanton*, No. CIV. 15-1229 MJD/JJK, 2015 WL 5009642, at *2 (D. Minn. Aug. 24, 2015) (quoting *Lutzeier v. Citigroup, Inc.*, 305 F.R.D. 107, 111 (E.D. Mo.

5

2015)).  In other words, "[m]otions to strike under [Rule12(f)] . . . should not be granted unless the defense, as a matter of law, cannot succeed under any circumstances."  *Id.*

## DISCUSSION

**I. Motion to Dismiss: Rule 12(b)(6)**

The Defendant argues that Nebraska law limits a bank director's liability to "claim[s] . . . aris[ing] out of gross negligence," and therefore Count II must be dismissed, because ordinary negligence is the standard governing breaches of fiduciary duty in Nebraska.  *See* Neb. Rev. Stat. § 25-21,240 (Reissue 2010); *Trieweiler v. Sears*, 689 N.W.2d 807, 831 (Neb. 2004) (citing Neb. Rev. Stat. § 21-2095) ("[Under Nebraska law,] the degree of care required of a director is the degree of care an ordinarily prudent person would exercise in a like position under similar circumstances.").

Neb. Rev. Stat. § 25-21,240 states that "[n]o claim or action seeking to recover money damages shall be brought by [the FDIC] . . . against any director . . . unless such claim or action arises out of the gross negligence or willful or intentional misconduct of such director . . . ."  Rather than bar certain claims against bank directors, as the Defendant argues, the statute merely raises a plaintiff's burden to one of gross negligence.  *See* William F. Kroener, III, *The Professional Liability Programs at the FDIC and the Rtc: Some Myths Past, the Experience Presented*, 19 Ann. Rev. Banking L. 227, 250 & n.82 (2000) (citing Neb. Rev. Stat. § 25-21,240) ("[T]he insulating statutes adopted in most states effectively shifted the plaintiff's burden to a standard at or beyond one of gross negligence.").

In the alternative, the Defendant seeks dismissal of Count II on the grounds that it is duplicative of Count I.  "Duplicative claims are those that stem from identical

allegations, that are decided under identical legal standards, and for which identical relief is available. As a matter of judicial economy, courts should dismiss claims that are duplicative of other claims." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010); *see Pippen v. Pedersen & Houpt*, 986 N.E.2d 697, 704 (Ill. App. Ct. 2013) (citing *Neade v. Portes*, 739 N.E.2d 496 (Ill. 2000)) (dismissing a breach of fiduciary duty claim as duplicative because it was "supported by the same operative facts and result[ed] in the same injury" as a legal malpractice claim).

Both claims appear to arise out of the same operative facts, require the same standard of proof, and seek the same damages. Yet the Court will not dismiss Count II as duplicative at this stage of the proceedings. There is little risk that allowing both claims to proceed will waste judicial resources or sow confusion, and there is no potential for double recovery.[1] *See Winkler v. Price*, No. 8:13CV52, 2013 WL 3776540, at *6 (D. Neb. July 17, 2013) (denying a motion to dismiss a breach of fiduciary duty claim as duplicative of a negligence claim prior to the close of discovery); *see also Braddy v. Infinity Assurance Ins. Co.*, No. 615CV119ORL28GJK, 2016 WL 1446202, at *1 (M.D. Fla. Apr. 11, 2016) (noting that the plaintiff could not obtain a double recovery although proceeding on duplicative claims).

**II. Motion to Strike**

The FDIC moves this Court to strike three of the Defendant's affirmative defenses: (i) FIRREA's statute of limitation ("First Affirmative Defense"); (ii) Laches ("Second Affirmative Defense"); and (iii) Neb. Rev. Stat. § 25-222's statute of limitations

---

[1] The Defendant did not raise the issue of duplicative claims until her reply brief, which afforded the FDIC no opportunity to respond to her argument.

("Third Affirmative Defense").  The FDIC alleges that all these defenses fail as a matter of law.

### A. First Affirmative Defense: FIRREA Extender Statute

The Defendant argues that this action was filed out of time, because FIRREA's three-year statute of limitations expired before Stehlik was issued his formal letters of appointment as Special Administrator and acquired standing to be sued.

FIRREA's "extender statute" limits tort claims brought by the FDIC to "the longer of . . . the 3-year period beginning on the date the claim accrues; or . . . the period applicable under State law."  12 U.S.C. § 1821(d)(14)(A)(ii).  "[T]he date on which the statute of limitations begins to run . . . shall be the later of . . . the date of the appointment of [the FDIC as receiver]; or . . . the date on which the cause of action accrues.  *Id.* § 1821(d)(14)(B).

The FDIC asserts that "the period applicable under State law" is a Nebraska four-year statute of limitations, codified at Neb. Rev. Stat. § 25-212 (Reissue 2010).  The Defendant argues that even if § 25-212 applies,[2] the effect of FIRREA's extender statute is to afford an additional three years from the date of the FDIC's appointment, not to restart the clock under § 25-212, which began to run when each claim accrued.

The Defendant's interpretation does not correspond with the language of § 1821(d)(14)(B) or the interpretation of the extender statute by the Eighth Circuit Court of Appeals and several other courts.  *See FDIC v. Nordbrock*, 102 F.3d 335, 337 & 339–40 (8th Cir. 1996) ("FIRREA provides for a minimum statute of limitations . . . which

---

[2] In its Third Affirmative Defense, addressed below, the Defendant alternatively argues that the FDIC's claims are subject to Nebraska's two-year statute of limitations for professional negligence.  *See* Neb. Rev. Stat. § 25-222 (Reissue 2010).

8

may be extended if the applicable state law statute of limitations is longer."); *FDIC v. Elmore*, No. 13 C 1767, 2013 WL 6185236, at *4 (N.D. Ill. Nov. 22, 2013); *RTC v. Fiala*, 870 F. Supp. 962, 975–76 (E.D. Mo. 1994) (citing *FDIC v. McSweeney*, 976 F.2d 532, 536 (9th Cir. 1992); *RTC v. Foley*, 829 F.Supp. 352 (D.N.M. 1993); *RTC v. Aycock*, No. CIV. A. 92-0761, 1993 WL 534127, at *1 (E.D. La. Dec. 14, 1993)) ("Several opinions provide support for the interpretation that § 1821(d)(14) 'restarts' the state law statute of limitations.").

The Defendant acknowledges this weight of authority, but argues that these decisions are wrong and this Court should adopt the reasoning of the Tenth Circuit Court of Appeals in *Nat'l Credit Union Admin. Bd. v. Barclays Capital Inc.*, 785 F.3d 387 (10th Cir. 2015), in which that court analyzed an identically worded extender statute under the Federal Credit Union Act, 12 U.S.C. § 1787(b)(14). Because this Court adheres to Eighth Circuit precedent, the extender statute restarted the running of the statute of limitations under § 25-212; the FDIC had four years from the date of its appointment to file this action; and the Complaint was timely filed. Accordingly, the First Affirmative Defense will be stricken.

### B. Second Affirmative Defense: Laches

The Defendant also asserts a defense of laches, noting the prejudice caused by the FDIC's delay in bringing suit after Fitl's death, nearly three years after the FDIC's appointment. The FDIC argues that a laches defense cannot prevail when a claim is filed within the applicable statute of limitations, and the Defendant's Second Affirmative Defense should be stricken.

The Eighth Circuit Court of Appeals has held that laches cannot be applied to federal statutory claims seeking legal relief when those claims are brought within the statute's period of limitation.  *See Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 170 (8th Cir. 1995) ("[S]eparation of power principles dictate that federal courts not apply laches to bar a federal statutory claim that is timely filed under an express federal statute of limitations."), *abrogation on other grounds recognized by Rowe v. Hussmann Corp.*, 381 F.3d 775, 782 (8th Cir. 2004).  The Defendant argues that *Ashley* and other cases cited by the FDIC are distinguishable because, unlike the statutory claims in those cases, the FDIC "is seeking to enforce common law rights . . . not rights created by Congress."  (Filing No. 48 at 6.)

The Defendant's argument fails as to Count I because FIRREA expressly created a cause of action for the FDIC to pursue against bank directors who commit acts of gross negligence.  *See* 12 U.S.C. § 1821(k).  With respect to Count II, the Nebraska Supreme Court has held "[i]ndependent of the statute of limitations, courts of equity have the inherent power to refuse relief after undue and inexcusable delay in bringing suit."  *Ohio Nat. Life Ins. Co. v. Rust*, 585 N.W.2d 438, 442 (Neb. 1998); *see Campbell v. Kirby*, 239 N.W.2d 792, 795–96 (Neb. 1976) (citing *Criswell v. Criswell*, 163 N.W. 302 (Neb. 1917)).  This rule appears to adhere to the pre-merger distinction of laches as a defense to equitable, but not necessarily legal relief.  *See United States v. Mack*, 295 U.S. 480, 489 (1935)  ("Laches within the term of the statute of limitations is no defense *at law*." (emphasis supplied)).  While the applicability of a laches defense in cases where relief is sought at law within a statutory limitations period is doubtful, the Nebraska Supreme Court has stated that "[a] defendant may raise any appropriate

defense available, whether it be legal or equitable, in any case. This rule follows from the fact that Nebraska has abolished all distinctions between actions at law and suits in equity . . . ." *Millard Rural Fire Prot. Dist. No. 1 v. City of Omaha*, 409 N.W.2d 574, 578 (Neb. 1987) (per curiam) (internal citations omitted). Accordingly, this Court will not strike the Defendant's Second Affirmative Defense as to Count II.

### C. Third Affirmative Defense: Nebraska Statute of Limitations

In the Defendant's Third Affirmative Defense, she argues that the FDIC's claims fall under Nebraska's professional liability statute of limitations—two years from a claim's accrual. *See* Neb. Rev. Stat. § 25-222 (Reissue 2010). She asserts that Fitl performed his allegedly negligent acts as a professional; the statute limitations ran before the FDIC's appointment; FIRREA's extender statute does not revive stale claims; and the FDIC's claims are barred.

"[T]he [Nebraska] Legislature has not specifically stated which occupations are governed by § 25-222." *Parks v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 684 N.W.2d 543, 549–50 (Neb. 2004) (internal quotation marks omitted) (quoting *Lawyers Title Ins. Corp. v. Hoffman*, 513 N.W.2d 521, 524 (Neb. 1994)). The Nebraska Supreme Court defines "profession" for purposes of § 25-222 as:

> [A] calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct, and committing its members to continued study and to a kind of work which has for its prime purpose the rendering of a public service.

*Bixenmann v. Dickinson Land Surveyors, Inc.*, 294 Neb. 407, 412, __N.W.2d__ (Neb. 2016) (internal quotation marks omitted) (quoting *Churchill v. Columbus Comm. Hosp.*,

11

830 N.W.2d 53 (Neb. 2013)). This definition "stresses the long and intensive program of preparation to practice one's chosen occupation traditionally associated only with professions." *Parks*, 684 N.W.2d at 550 (internal quotation marks omitted) (quoting *Tylle v. Zoucha*, 412 N.W.2d 438, 441 (Neb. 1987)). Whether an occupation is a profession is a question of law, yet the analysis is necessarily fact-intensive, requiring a court to consider an occupation's requirements, such as obtaining a license or a college degree, and the underlying training and specialized knowledge such requirements entail. *See Bixenmann*, 294 Neb. at 411–12, __N.W.2d__; *Jorgensen v. State Nat. Bank & Trust Co.*, 583 N.W.2d 331, 334–35 (Neb. 1998).

Although the FDIC relies on *Jorgensen* for the proposition that bank employees are not professionals, (Filing No. 49 at 11), the Court cannot say at this stage of litigation that the same factual considerations relied on by the court in *Jorgensen* are present here. *See Jorgensen*, 583 N.W.2d at 335 (examining the defendant's employees' continuing education practices, possession of specialized knowledge, and the fact that the employees "were expected to do nothing more than fill out forms").

For this reason, the Motion to Strike the Third Affirmative Defense will be denied.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss will be denied and the Motion to Strike will be granted in part.

IT IS ORDERED:

1. The Partial Motion to Dismiss for Failure to State a Claim (Filing No. 33) is denied;

2. The Motion to Strike Certain Affirmative Defenses (Filing No. 42) is granted in part as follows:

> Defendant's First Affirmative Defense, based on the statute of limitations under the Financial Institutions Reform, Recovery and Enforcement Act of 1989, is stricken; and

> The motion is otherwise denied.

Dated this 2nd day of September, 2016.

                                      BY THE COURT:

                                      s/Laurie Smith Camp
                                      Chief United States District Judge